BARRY, Judge.
Carl Dengel appeals a judgment in favor of Hibernia National Bank in his suit under the Louisiana Consumer Credit Law [LCCL] for a refund of overcharges, penalties and attorney’s fees.
BACKGROUND
On September 16, 1980 Dengel signed a $130,656.00 promissory note and disclosure statement as required by the Federal Truth-In-Lending Act (15 U.S.C. § 1601 et seq.) and Regulation Z (12 C.F.R. § 226.2 b (1980)). The left side of the document specifies 120 monthly payments of $1,088.80 commencing October 25, 1980 with the last payment due on September 25, 1990. Section F provides that if the note is prepaid in full the borrower is entitled to a rebate of the unearned precomputed interest based on the Rule of 78’s after deducting a $25.00 prepayment charge if less than one-half of the term had expired. The loan was se *948 cured by a second mortgage on Dengel’s immovable property at 1917-19 Peniston Street. The note declares that it is to be governed under LCCL. Dengel acknowledged receipt of a copy of the Truth in Lending disclosure statement.
Hibernia’s disclosure statement shows the loan proceeds were $67,750.00 and other charges of $135.00 made the total amount financed $62,885.00. The precomputed finance charge (interest) was listed at $67,771.00. The annual percentage rate [APR] was 14.75% and all payments (amount financed plus finance charge) would total $130,656.00. Both sides stipulated that Dengel paid the loan in full after three years on September 14, 1983.
In his petition Dengel alleges the precomputed 14.75% interest should amount to $62,297.00, not the listed $62,771.00 and claims an overcharge of $474.00. He says. Hibernia erroneously charged him $250.47 for the odd nine days of interest on the first monthly payment and added that amount to the amount financed before computing the interest due.
On August 24,1983 Dengel wrote a certified letter to Hibernia, return receipt requested, and advised that he previously hand delivered to the bank an amortization schedule which showed his monthly payment should have been $1,084.85 instead of $1,088.80. He incorrectly noted the finance charge as $67,750.00 instead of $67,885.00. He claimed the interest rate was miscalculated and resulted in an overcharge of $3.95 on each of the 120 payments, or $474.00. Dengel contends he made formal demand for the excess finance charge under La.R.S. 9:3552 A(l)(a).
Assistant Vice President and Loan Services Manager Linda Earle responded by letter on August 31, 1983 that the amount financed was $67,885.00, not $67,750.00. She explained there were 39 days of interest charged to the first payment because of the nine odd days’ interest charge. Ms. Earle attached a calculator machine tape and the loan document to substantiate the finance charge. She invited Dengel to call if the information did not suffice.
On October 21,1983 Dengel wrote another certified letter and attached his first certified letter. He stated that La.R.S. 9:3552 A(l)(a)ii provides that a copy of the notice previously mailed be mailed to the extender of credit’s agent for service of process. Ms. Earle responded in a certified letter dated October 25, 1983 that his figures were miscalculated and she enclosed her August 31, 1983 letter. She again invited Dengel to call.
Dengel filed suit on November 10, 1983 and alleged that Hibernia’s miscalculation and its failure to correct as well as the computation of interest on interest constitutes an intentional violation of La.R.S. 9:3552. Dengel prayed for all loan charges which he calculated to be $31,916.83, plus three times the total finance charge of $62,-297.00 (his calculation of interest at 14.75% without the nine odd days of interest) or $186,891.00 as civil penalties, plus attorney’s fees under La.R.S. 9:3552 A(l)(a). Alternatively, he alleged Hibernia’s computation of interest on interest violated La.C. C. Art. 1939 (pre-1984) [Art. 2001 (1984)] and entitles him to all of the interest in the contract, $62,771.00, under the forfeiture provisions of La.R.S. 9:3501.
The trial judge concluded that Dengel did not carry his burden of proof, particularly as to the amount of interest he actually paid. The court viewed the disclosure statement as having a left side relative to the note which complies with Louisiana law (A-I) and a right side relative to disclosure which complies with federal law (1-6). The bottom of the document, the promissory note, provides that $130,656.00 is payable based on the payment schedule as shown in Item B. Item (or Section) B on the left side relates to Louisiana law and the note only refers to the left side which lists no annual percentage rate. The court noted the difference in the sides of the document:
However, I don’t feel that the situation is such that I can ignore the difference in the two. And under the circumstances I feel like Louisiana Law has been complied with when one lump sum was put into this amount. When I read that in connection with my inability to differentiate between the actual interest charge *949 and the amount of the penalties under the Rule of 78, I just have no choice other than to rule for the Defendant.
ERRORS
Dengel assigns five errors: (1) dismissing his lawsuit when the document shows a 14.75% annual rate whereas 14.85% was charged, and no corrective action was taken after the bank was notified; (2) construing ambiguities in Hibernia’s standard form in Hibernia’s favor; (3) not allowing Dengel to call Ms. Earle to testify in order for him to connect the calculator tape to his loan, and not permitting Dengel to testify that Ms. Earle told him the tape was used for Hibernia’s calculations; (4) not allowing into evidence the bank’s commitment letter which specifies a 14.75% APR; (5) not allowing testimony to allegedly show that the bank intentionally had its calculators programmed to charge interest on interest.
SPECIFICATIONS 1 AND 2
La.R.S. 9:3501 et seq., was enacted to protect unwary customers and deter unscrupulous credit practices by providing a remedy for injured consumers. Reliable Credit Corporation v. Smith, 418 So.2d 1311 (La.1982). The Federal Truth In Lending Law is a disclosure law whereas LCCL governs the essentials of the consumer transaction. Id. at 1314, Fn. 2.
Both sides agree that Louisiana has no disclosure requirements. Federal law preempts state law as to maximum interest charges, but it does not involve all state law which regulates credit transactions. United Federal Savings and Loan Association v. Cage, 487 So.2d 171 (La.App. 4th Cir 1986), writ denied 491 So.2d 22 (La.1986).
Joseph Martin, Dengel’s expert on banking transactions and consumer loans, was a bank president and works as a consultant, but he is not an actuary. The trial court allowed Martin to testify on how he calculated the amounts of the loan, but not whether Hibernia’s calculations were correct. He testified the loan document does not violate the federal disclosure requirements, but said 14.75% was not the rate charged.
Martin computed simple interest on the nine odd days to be $250.33 (based on 9 of 360 days even though the tape indicated 365 days was used in the calculator’s computations) and added that sum to the amount financed, $67,885.00. He used the Realtors Blue Book and the Thorndike Encyclopedia of Banking (two table services) to arrive at $62,546.65 as interest. He calculated the total figure for the note to be $130,432.65.[1] He computed interest on a $62,885.00 loan with 120 payments of $1,088.80, and arrived at a 14.85% rate.
Martin concluded the total overcharge for a ten year loan would be $223.35. Although he did not compute the Rule of 78’s and was not familiar with such computations, he felt payment of the loan in 36 months would amount to an overcharge of about 50% of $223.35, or $112.00. Martin conceded LCCL has no procedure to calculate precomputed interest; rather, the creditor may choose the method.
La.R.S. 9:3519 B[2] as it appeared in 1980 at the time of the loan did not limit the calculation method:
This section does not limit or restrict the manner of contracting for the loan finance charge, whether by way of add-on, discount, or otherwise, so long as the rate of the loan finance charge does not *950 exceed that permitted by this section. If this loan is precomputed;
(1) the loan finance charge may be calculated on the assumption that all scheduled payments will be made when due, and
(2) the effect of prepayment is governed by the provisions on rebate.
Martin testified that the bank’s document specified one interest rate but it used a higher rate. However, he calculated simple interest on the nine odd days in the precomputed loan and he had no expertise on the permitted federal method of calculations. He said Hibernia could have increased the interest rate to be more accurate and would have been in compliance with Truth-In-Lending and Regulation Z. However, he conceded that 14.75% was within the quarter of one percent of disclosure accuracy required by 12 CFR § 226.5(b)(1) and (2).
According to Martin’s calculations which are based on Hibernia’s calculator tape, Hibernia should have specified the rate at 14.80%, or within a quarter of a percent. Although Martin felt 14.75% on the federal disclosure document and 14.85% on the promissory note would accurately reflect the rate, he was uncertain whether declaring two rates would violate the Truth-In-Lending law. During his prior deposition Martin had problems with his calculations on the examples in the supplement to Regulation Z. When the problems were pointed out during trial, he said it had been a long time since he used Regulation Z.
Dengel testified that he made 34 payments of $1,088.88, or $38,108.00, and paid the loan in full on September 14, 1983 with a check for $61,693.83, a total of $99,801.83 in principal and interest. Over Hibernia’s objection, he subtracted the principal of $67,885.00 to arrive at $31,916.83 of interest. Hibernia properly argued that this is not a simple interest loan; it is a precomputed interest loan. Dengel did not mention in his petition a prepayment penalty, but admitted on cross-examination he was aware that he would pay a penalty if he prepaid. Dengel, an attorney with a Masters of Law in taxation, also conceded that he barely read the document and made no calculations to verify the interest rate before he signed. He testified that he was not aware of the mechanical application of the Rule of 78’s rebate procedure as set out in the loan document.
Hibernia moved for a directed verdict on the basis that Dengel did not prove the actual amount of interest he paid and therefore did not establish damages under federal or state law. According to the Rule of 78’s Dengel was required to pay a prepayment penalty. However, Hibernia claimed he presented no evidence to indicate what part of his total payments of $99,801.83 was the penalty and what part was interest. No expert testified on the amount of the penalty. Hibernia noted the lack of testimony that the Bank knowingly charged an improper interest rate and argued that notice to the bank was insufficient under the statutory scheme.
The motion for a directed verdict was denied and Hibernia called Paul Barron, Vice Dean of Tulane Law School, its expert in consumer credit law and procedure. Over Dengel’s objection, he testified that APR is a term of art which is different than the interest rate because it takes into account (1) the amount the borrower pays to borrow money, and (2) other charges that comprise the cost of the loan. Barron stated APR is a broader term than interest.
Hibernia introduced a copy of Regulation Z as it appeared at the time of the loan. 12 C.F.R. § 226.2(g) states that APR means the annual percentage rate of finance charge determined under 12 C.F.R. § 226.5, which provides that the rate be determined by the actuarial method (instructions in Supplement I to Regulation Z) or by application of the Federal Rule to the nearest quarter of one percent. 12 C.F.R. § 226.5(c) notes the Regulation Z APR tables. 12 C.F.R. § 226.6(b)(l)(ii) and (iii) declares that state laws are preempted if they require disclosure of the amount of the finance charge determined in any manner other than that prescribed in Sections 226.4 or 226.5. LCCL does not contain a definition of an annual percentage rate.
*951 Barron testified that he utilized example 2 (similar to this loan) in Supplement I to § 226.40 of Regulation Z to compute the APR. On the stand he used a Hewlett-Packard calculator to determine the APR to be 14.748% rounded to 14.75%. The calculator automatically counts the odd days and adds them into the computation of interest due. He concluded the specified APR of 14.75% applied to $67,885.00 for 120 payments plus the odd nine days of interest was accurate. He stated that the nine days of interest would be amortized over the term of the loan. Barron declared that method would not constitute interest on accruing interest (since the interest does not accrue over the period in precomputed interest loans) prohibited by La.C.C. Art. 1939 (pre-1984) [Art. 2001 (1984)]. That article as amended by 1972 La. Acts, No. 454 § 7 excepted the Louisiana Consumer Credit Law.[3]
Barron agreed with Dengel’s expert that LCCL does not require disclosure and has no provision on how to calculate interest. He concluded that the only agreement as to the interest rate on the loan was the 14.75% APR shown on the federal disclosure section. He said the parties did not agree to another interest rate. The note was drafted pursuant to state law and shows 120 monthly payments of $1,088.88.
We find no ambiguity in Hibernia’s document. It was agreed that the APR was 14.75%. No other interest rate appears on the document. The note for $130,-656.00 referenced Item B which scheduled 120 payments of $1,088.80.
The trial court was convinced that the annual percentage rate is “a creature that has been standardized by statute.” The court concluded the actual rate had some relation to the APR and the primary question related to proof. Dengel only testified that the amount he paid in addition to the amount financed was $31,916.83, which he called interest. Neither Martin nor Barron calculated the penalty under the Rule of 78’s or the actual amount of interest paid. The judge concluded that he could not separate the interest charged from the penalty and Dengel did not carry his burden of proof.
We do not find manifest error. The only interest rate on the document is 14.75% APR. The promissory note had no interest rate. Dengel’s expert testified that a minimal adjustment up to 14.80% was necessary but conceded 14.75% APR complies with the federal disclosure law since it is within a quarter of a percent. Hibernia’s expert declared that the 14.75% APR was totally accurate.
Dengel failed to prove Hibernia miscalculated, that the Bank intentionally overcharged him, or that the Bank computed interest on accruing interest in violation of Louisiana’s statutory law.
We find no merit in specifications 1 and 2.
SPECIFICATIONS 3, 4, and 5
These specifications relate to rulings on admissibility of evidence and testimony.
Dengel attempted to testify that during his conversation with Linda Earle, the Hibernia officer who handled his letters, she told him that the calculator tape attached to her August 31, 1983 letter was the one used for his loan calculations. Hibernia objected. The court sustained the objection on hearsay. Dengel had not listed Ms. Earle as a witness and she was not scheduled to testify.
However, the letter with the attached tape was admitted as P-3. The tape shows 39 days until the first payment which was to include interest for the nine odd days. The calculator tape lists the 14.75% rate. In her letter Ms. Earle stated that she was enclosing the calculator tape, the note and disclosure statement and said: “The number of the days to first payment was 39, therefore, the odd days interest charge should be considered.” Ms. Earle’s deposition testimony proffered by Dengel indicates the tape with the letter is the one *952 used to calculate the loan. There she testified that the interest for the nine odd days was added into the computation. The amount was calculated for 120 months plus the nine days.
Dengel's testimony that in a telephone conversation Ms. Earle said the nine days of interest was used in the computation and she identified the tape added nothing to his proof on the actual amount of interest he paid (to prove an overcharge) or to show a statutory violation. The substance of Ms. Earle’s proffered testimony was provided by her letter which was admitted into evidence. Even if the trial court erred in disallowing the testimony, the error was harmless.
The trial court also did not allow George Amann, who sold the programmable calculators to Hibernia, to testify that the machines were programmed to charge a higher APR than the rate on the document. The tape in evidence shows the calculation included the nine days of interest and the 14.75% APR. Amann’s testimony would not have carried Dengel’s proof.
These specifications lack merit.
We pretermit discussion of Hibernia’s arguments relating to notice and federal preemption of state law.
The judgment of the trial court is affirmed.
AFFIRMED.

. We note that Martin's total figure of $130,-432.65 (noted in his testimony) was $1.00 off since the total of $67,885.00 and $62,546.65 is $130,431.65. The overcharge would then correctly be $224.35 pursuant to his calculations, although he testifies it is $223.35.

. La.R.S. 9:3519 B was amended in 1986 to include the federal methods of computation:
This Section does not limit or restrict the manner of contracting for loan finance charges under a consumer loan, whether by way of precomputed interest, simple interest, or otherwise, so long as the annualized loan finance charge rate computed on an actuarial or U.S. Rule basis over the entire scheduled term of the transaction, assuming that all payments will be made when due and disregarding the possible effects of early prepayment or acceleration of maturity, does not exceed the maximum rates permitted in this Chapter. Demand loans shall have presumed term of five years.

. La.C.C. Art. 1939 provided in pertinent part:
Except as provided by the Louisiana Consumer Credit Law [La.R.S. 9:3510], interest upon interest cannot be recovered unless it be added to the principal, and by another contract made a new debt.